IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACKSON EXANT | : | CIVIL ACTION |
| | : | |
| v. | : | No. 26-5347 |
| | : | |
| SECRETARY MARKWAYNE MULLIN | : | |
| et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                    **August 4, 2026**

Petitioner Jackson Exant brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (DHS).  He argues his mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2) is unlawful.  Because § 1225(b)(2) does not apply to noncitizens like Exant who have resided within the United States for years, the Court will grant his petition.

**BACKGROUND**

Jackson Exant is a 33-year-old native and citizen of Hati who entered the United States without inspection on May 2, 2022 and currently resides in Dover, Delaware. Pet. ¶¶ 2, 19, Dkt. No. 1.  He was apprehended by the DHS and released.  *Id.* ¶ 20.  He later filed for asylum which remains pending.  *Id.* ¶ 21.  He also successfully applied for Temporary Protected Status which has since expired and has not been renewed.  *Id.* ¶¶ 22-23.

On June 9, 2026, he was charged in Kent County Court of Common Pleas in Delaware with a variety of assault and weapons offenses.  Gov't Resp. 2, Dkt. No. 4.  During this time, he remained in state custody while his criminal case was pending.  Pet. ¶ 24.  On June 11, 2026, the Government lodged a detainer on Exant.  Gov't Resp. Ex. A 2. Dkt. No. 4-1.  On July 9, 2026, his charges were reduced to misdemeanors and transferred to Kent County Family Court.  Gov't Resp. 3.  These charges include Carrying a Concealed Dangerous Instrument, Menacing, Assault Third

Degree Intentionally or Recklessly Causes Physical Injury to Another, and Endanger Welfare of Child-Child Witnessed a Specific Crime by Sight/Sound. *Id.* at 3. The Government does not justify Exant's current immigration detention on these criminal charges. *Id.* at 2.

On July 26, 2026, he was remanded by local law enforcement into Immigration and Customs Enforcement's (ICE) custody and detained. Gov't Resp. Ex. A 2. He filed this petition on July 29, 2026, arguing his detention without a bond hearing is unlawful. *Id.* ¶¶ 45-46. The Government contends Exant is detained under 8 U.S.C. § 1225(b)(2)(A) because, as an "applicant for admission," he remains "seeking admission" until he is formally admitted or his removal proceedings conclude. Gov't Resp. 1-2.

**DISCUSSION**

This case turns on a statutory question this Court and many others in this District have already resolved against the Government: whether a noncitizen who entered without inspection years ago and is later arrested in the interior remains an alien "seeking admission" within the meaning of § 1225(b)(2)(A). The Government acknowledges courts in this District have rejected its interpretation, though it continues to press that position here. Gov't Resp. 2.

In *Ndiaye v. Jamison*, this Court held that "§ 1226 applies to noncitizens . . . who have been residing in the country, while § 1225 is reserved for newly arriving noncitizens." No. CV 25-6007, 2025 WL 3229307, at *8 (E.D. Pa. Nov. 19, 2025). Judges in this District have consistently reached the same conclusion. *See, e.g.*, *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025); *Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Rios Porras v. O'Neill*, No. 25-6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025); *Rodrigues v. Jamison*, No. 26-1407, 2026 WL 676468 (E.D. Pa. Mar. 10, 2026).

2

Appellate courts have now split on the issue. Rejecting the overwhelming weight of authority from district courts around the country, divided panels of the Fifth and Eighth Circuits have agreed with the Government's position, holding that an "applicant for admission" is "seeking admission" so long as he is "'present in the United States [and] has not been admitted,' . . . regardless of whether he takes 'any further affirmative steps to gain admittance.'" *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026) (alteration in original) (citations omitted); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026). The Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits, in contrast, have "join[ed] the overwhelming majority of federal judges across the Nation" in holding that § 1225(b)(2)(A) "does not apply to . . . noncitizens[] who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." *Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731-34 (6th Cir. 2026) (holding § 1225(b)(2)(A) does not apply to long-resident noncitizens arrested in the interior and affirming due process relief requiring individualized bond hearings under § 1226(a)); *Cirrus Rojas v. Olson*, --F.4th--, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026) ("We join the majority of the circuits that have confronted this question in rejecting the government's newfound statutory requirement for mandatory detention . . . ."); *Rodriguez Vazquez v. Bostock*, --F.4th--, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026) ("[W]e conclude that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)."); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026) (concluding "§ 1225(b)(2)(A) is limited to the border, and that [petitioner] is an 'applicant for admission' but not 'seeking admission'"); *Hernandez Alvarez v. Warden, Fed. Det.*

3

*Ctr. Miami*, 175 F.4th 1258, 1275-76 (11th Cir. 2026) (holding § 1225(b)(2)(A) "applies only to . . . those seeking lawful entry into the United States," not "present aliens not seeking admission"). [1]

None of this appellate authority binds this Court, but the decisions in *Barbosa da Cunha*, *Lopez-Campos*, *Cirrus Rojas*, *Rodriguez Vazquez*, *Santillan Quiroz*, and *Hernandez Alvarez* align with this Court's analysis in *Ndiaye* and with "the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position." [2] *Barbosa da Cunha*, 175 F.4th at 71. This Court will adhere to its prior decisions holding that "§ 1226 applies to noncitizens like [Exant] who have been residing in this country, while § 1225 is reserved for newly arriving noncitizens." *Ndiaye*, 2025 WL 3229307, at *8. Exant's present detention did not occur at or near the border or during an ongoing inspection process. He entered the United States in 2022, lived here for over four years, and was detained by ICE in the interior in July 2026. On these facts, his detention is governed by § 1226(a), not § 1225(b)(2)(A). Because the Government offers no basis for Exant's detention other than § 1225(b)(2)(A), his current detention is unlawful.

Unlike many of the other immigration detainee petitioners this Court has encountered, Exant has pending criminal charges that appear to involve domestic violence. So the Government suggests the Court order a bond hearing be given to Exant instead of releasing him. But the "'typical remedy' for 'unlawful executive detention' is release." *Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) (Sánchez, J.) (quoting *Munaf v. Geren*,

---

[1]    The Third Circuit heard oral argument on claims related to this issue on May 11, 2026. *See* Gov't Resp. 3-4.

[2]    This number has grown significantly since *Barbosa da Cunha* was decided. *See* Kyle Cheney, *Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy*, Politico (June 11, 2026, at 14:04 ET), https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614 [https://perma.cc/7JZQ-AXH4] (displaying a database of over 460 judges who have ruled against the new mandatory detention policy).

553 U.S. 674, 693 (2008)).  "The Court will therefore order the Government to release" Exant because "[t]his remedy restores the status quo before the unlawful detention." *Id.*  The Court emphasizes that this order "does not prevent the Government from seeking future detention under § 1226(a) provided it shows that detention is warranted under constitutionally adequate procedures." *Id.*  Indeed, if the Government deemed Exant a sufficient danger to the community or a flight risk, it could have sought a bond hearing for Exant when it initially detained him.

**CONCLUSION**

Accordingly, the Court will grant Petitioner's Petition for a Writ of Habeas Corpus and order his immediate release.  An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.